# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

**CAROL A. CANTRELL,**

      **Plaintiff,**

**v.**

**BRIGGS & VESELKA CO.,**

      **Defendant.**

§
§
§
§
§
§
§

**CIVIL ACTION NO. _____**


## EXHIBIT B – STATE COURT PLEADINGS

Ex. B-1        Plaintiff Cantrell's Original Petition and Request for Declaratory Judgment (January 24, 2012)

Ex. B-2        Copy of Civil Case Information Sheet (January 24, 2012)

> **2012-04331 / Court: 055**

Filed 12 January 24 A10:43
Chris Daniel - District Clerk
Harris County
ED101J016692107
By: Sharon Carlton

CAUSE NO. 2012-_____

| | | |
|---|---|---|
| CAROL A. CANTRELL, | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | HARRIS COUNTY, TEXAS |
| BRIGGS & VESELKA CO., | § | |
| | § | |
| Defendant. | § | _____ JUDICIAL DISTRICT |

### PLAINTIFF CANTRELL'S ORIGINAL PETITION AND REQUEST FOR DECLARATORY JUDGMENT

Plaintiff Carol A. Cantrell respectfully files her Original Petition and Request for Declaratory Judgment against Defendant Briggs & Veselka Co. ("B&V") as follows:

### A.  SUMMARY OF CASE

As a matter of policy, Texas does not allow overbroad non-compete covenants.  Nor does it allow non-competes to be enforced against attorneys.  But that is precisely what this case is about: a certified public accounting (CPA) firm trying to prohibit a retired employee from practicing law during her retirement even though she is a lawyer.  Moreover, B&V is using a patently overbroad, ten-year non-compete clause as a basis to cheat Plaintiff Cantrell out of her retirement pay.  B&V claims that Cantrell's practice of law during her retirement somehow competes with B&V's certified public accounting business because her law practice involves some non-lawyer tasks.  The emptiness of that argument will become obvious in time, but even assuming it for now, the law does not permit B&V, a CPA firm, to enforce a ten-year, industry-wide non-compete that operates to "forfeit" Cantrell's deferred compensation if she practices law.

---

PLAINTIFF'S ORIGINAL PETITION        & REQUEST FOR DECLARATORY JUDGMENT
PAGE 1 OF 11

**EXHIBIT B-1**

In addition to her damages for breach of contract, Cantrell is entitled to additional relief under Section 15.51(c) of the Covenant Not to Compete Act, which awards a former employee her attorney's fees when the former employer is seeking to enforce an overbroad non-compete. The seminal case on the issue of overbroad non-compete agreements involving the accounting industry is now over twenty years old, *see Peat Marwick Main & Co. v. Haass*, 818 S.W.2d 381, 388 (Tex. 1991). So B&V will not be heard to complain about the obvious over breadth of its non-compete.   To that end, Plaintiff Cantrell also seeks a declaration of her rights under Chapter 37 of the Texas Civil Practice and Remedies Code (the "Declaratory Judgment Act").

**B.    DISCOVERY CONTROL PLAN**

1.    Discovery will be conducted under Level 2 of Texas Rule of Civil Procedure 190.

**C.    PARTIES**

2.    Plaintiff Carol Cantrell is an individual residing in Harris County, Texas.

3.    Defendant Briggs & Veselka is a Texas company with its principal place of business in Houston, Texas.  It may be served with process by serving its registered agent, John C. Flatowicz, 6565 West Loop South, Suite 700, Bellaire, Texas 77401.

**D.    VENUE AND JURISDICTION**

4.    Venue is proper in Harris County, Texas, pursuant to Section 15.002(a)(3) because Defendant maintains its principal office in Harris County and pursuant to Section 15.002(a)(1) because it is the county where a substantial part of the events giving rise to the claims occurred.

5.    Jurisdiction is proper in this Court as the amount in controversy is in excess of the minimal jurisdiction requirements of this Court.

### E.   FACTUAL BACKGROUND

6.      Plaintiff Carol Cantrell, a licensed attorney, worked as a shareholder for Defendant B&V for over eleven years.   B&V is in the business of providing public accounting services, including certified public audits, reviews, and compilations. It also provides valuation, business consulting, and tax services in the Houston area. Its shareholders also receive compensation for placing clients into investments. Prior to her employment with B&V, Cantrell and her husband owned and operated its predecessor, Cantrell & Company, for about twenty-two years.

*The Employment Agreement*

7.      On December 1, 2000 Cantrell and B&V entered into a written merger agreement, employment agreement, and stock redemption agreement whereby Cantrell exchanged her CPA firm, worth over $1 million, for a deferred compensation agreement with B&V if she met a 20-year service requirement.   The deferred compensation agreement credited Cantrell with ten years of service for her past twenty-two years with predecessor Cantrell & Company. Cantrell would not have entered the merger absent the deferred compensation agreement because that was the sole compensation she received in the merger, except a nominal amount for her B&V stock upon redemption. The employment agreement (the "Employment Agreement") also contained non-competition and non-solicitation provisions identical to those signed by all shareholders of B&V at that time.  A true and correct copy of the Employment Agreement is attached as Exhibit A and is incorporated herein by reference.

8.      In addition to a salary, B&V agreed to pay Cantrell deferred compensation upon meeting a twenty-year service requirement and the occurrence of certain events, including Cantrell's retirement.  (*See* Exhibit A, at Sections 3.1, 6.2).   The Employment Agreement

precludes receipt of deferred compensation by employees who are terminated "with cause."  (*See id.* at Section 6.2.).

9.    The deferred compensation amount is calculated as follows:

> **6.3    Deferred Compensation Amount.**  The Deferred Compensation Amount shall be equal to the product of four (4) times the EMPLOYEE'S Average Compensation multiplied by her Vested Percentage.  The EMPLOYEE'S Vested Percentage and Average Compensation shall be determined as of the date of the Termination Event and shall not be affected by the subsequent occurrence of the other events listed in Section 6.2.  After serving twenty (20) years of Creditable Service, the EMPLOYEE'S Vested Percentage shall be eighty percent (80%), and her Vested Percentage shall increase an additional ten percent (10%) for each of the following two (2) years at which time the EMPLOYEE'S Vested Percentage shall be one hundred percent (100%). . . .

(*Id.* at Section 6.3.)  Payments of the deferred compensation amount are to begin on the fifteenth day of the month following the end of the calendar quarter in which the Termination Event occurs and shall end ten years later.  (*Id.* at Section 6.4.)

The Employment Agreement further provided that should Cantrell compete by engaging in the Employer's business *or proposed business* at any time during the ten-year pay out period of her deferred compensation, she would forfeit the entire remaining balance of the deferred compensation amount:

> 6.7    **Forfeiture Upon Competing With the Employer or Terminated With Cause.**  If during the Pay-Out Period the EMPLOYEE competes, directly or indirectly, with the EMPLOYER as an employee, employer, consultant, agent, principal, partner, stockholder, corporate officer, director, or in any other individual or in any other representative capacity, be engaging or participating in any business that is engaged in the EMPLOYER'S or its Affiliate's business or proposed business within fifty (50) miles where the EMPLOYER or its Affiliate engages or proposed to engage in business at the time of the Termination Event, the EMPLOYEE forfeits all remaining balance of the Deferred Compensation Amount outstanding as of the date he begins engaging in such competition, and the EMPLOYER is relieved of its obligation to make future payments to the EMPLOYEE under this Article VI.  This forfeiture shall be in addition to, and not in lieu of, any additional right the

---

EMPLOYER may have under this Agreement or as provided by law.  Furthermore, if the EMPLOYEE is terminated With Cause as provided in Section 2.3(d), the EMPLOYEE forfeits all rights he may otherwise have under this Article VI.

(*Id.* at Section 6.3.)

### Cantrell's Termination

10.    On November 11, 2011, Cantrell gave B&V over two months' notice that she would be retiring from the company, effective January 15, 2012.  At that time, Cantrell's Vested Percentage was 90%, entitling her to approximately $1.2 million, payable over the next ten years. Cantrell subsequently accelerated her retirement date to January 3, 2012, by giving written notice to B&V through its legal counsel.

11.    Soon after Cantrell gave notice of her retirement, B&V engaged in a campaign to deprive her of her deferred compensation.  On January 11, 2012, shareholders of B&V adopted a written consent without notice to Cantrell, removing Cantrell as a director of B&V's board of directors.   And on January 12—nine days after Cantrell retired—the shareholders of B&V purportedly "rejected" her retirement and terminated her "with cause."

12.    In a letter dated January 13, 2012, B&V informed Cantrell that she had been terminated "with cause" and unequivocally stated that it would not pay her the deferred compensation amount under her Employment Agreement.  (*See* Exhibit B and exhibits attached thereto.)  In support of its "with cause" determination, B&V makes general allegations that Cantrell violated the non-competition and non-solicitation covenants in her Employment Agreement by forming a "competing company," Cantrell & Cowan, PLLC (a law firm), and allegedly soliciting and performing law services for B&V clients on behalf of her new company. (*Id.*)  The letter further stated that B&V is withholding $22,836.00 of final wages owed to her,

purportedly to pay their legal fees for having to respond to arguments by Cantrell's attorney regarding the enforceability of portions of the Employment Agreement. (*Id.*)

13.     B&V's alleged justifications for refusing to pay the deferred compensation amount contain several flaws.  First, the non-competition and non-solicitation provisions unlawfully restrict Cantrell's rights to practice law after the termination of her public accounting employment with B&V.  Second, the forfeiture of deferred compensation provision is overbroad in scope and duration and exceeds the protections necessary to safeguard B&V's interests, if any.  Assuming B&V has a protectable interest in practicing public accounting, it does not outweigh the public's interest in its right to choose a lawyer. The forfeiture provision provides that Cantrell forfeits the remaining balance of the deferred compensation amount if she competes with B&V at any time during the ten-year payout period of the deferred compensation in the Employer's business *or proposed business*.  This clause effectively creates a ten-year non-competition restriction and permits B&V to withhold payment even though its non-compete is unenforceable.

14.     Of course, and regardless of its enforceability, Cantrell has not violated the covenants in her Employment Agreement.  Cantrell & Cowan, PLLC is a law firm.  Its charter restricts it to the practice of law.  It is not in the business of public accounting, which is B&V's business.  Cantrell & Cowan, PLLC does not hold a "CPA practice unit" license and is thereby prohibited from practicing public accounting.  B&V, on the other hand, holds a valid CPA practice unit license and not a law license.  Therefore, B&V is prohibited from practicing law.  Simply put, Cantrell & Cowan, PLLC and B&V are not in the same business.  Moreover, on January 3, 2012, Cantrell became Board Certified in Tax Law by the Texas Board of Legal Specialization (TBLS), a designation which is not available to lawyers working in public accounting firms.  Cantrell &

Cowan, PLLC practices exclusively tax law, specializing in highly sensitive and complicated tax issues that involve tax litigation, which B&V cannot offer.

## F.     CAUSES OF ACTION

**Count 1 — Suit for Declaratory Judgment**

15.     A justiciable controversy exists, pursuant to Chapter 37 of the Texas Civil Practice and Remedies Code, between Cantrell and B&V.  B&V is enforcing unenforceable restrictions in Cantrell's Employment Agreement, and, alternatively, is enforcing those restrictions to a greater extent than necessary to protect B&V's interest, if any.  Specifically, B&V has unequivocally taken the position that Cantrell's alleged conduct constitutes a breach of the non-solicitation and non-competition provisions in her employment agreement with B&V. Based on these assertions, B&V has threatened to file suit against Cantrell, terminated Cantrell's employment "with cause" after she had already retired, withheld over $20,000.00 of Cantrell's wages, and has unequivocally stated that it will not pay Cantrell deferred compensation that is owed to her over the next ten years under the Employment Agreement.

16.     However, the non-competition and non-solicitation provisions and the forfeiture of deferred compensation clause in the Employment Agreement are void as against public policy, constitute an unlawful restraint of trade in violation of Texas law, and contain restrictions that are broader than necessary to protect B&V's interests, if any, and are not outweighed by the public's right to choose a lawyer.

17.     Accordingly, Cantrell is entitled to a judgment declaring that: (i) the non-competition and non-solicitation provisions in Sections 4.1, 4.2, and 4.4. of the Employment Agreement are unenforceable; (ii) the forfeiture of deferred compensation provision in Section

6.7 of the Employment Agreement is unenforceable; (iii) B&V has no basis for withholding Cantrell's compensation; (iv) Cantrell is not in violation of any contractual obligations to B&V; and (v) Cantrell does not possess any trade secrets of B&V.

18.     Cantrell is entitled to recover costs and reasonable and necessary attorneys' fees that are equitable and just under Section 37.009 of the Texas Civil Practice and Remedies Code.

**Count 2 — Attorney's Fees Pursuant to Section 15.51(c)**

19.     Pursuant to Section 15.51 of the Texas Business and Commerce Code, Plaintiff Cantrell is entitled to her reasonable and necessary attorneys' fees defending against the enforcement of the covenants not to compete because the covenants "at issue at the time of the execution … did not contain limitations as to time, geographical area, and scope of activity to be restrained that were reasonable and the limitations imposed a greater restraint than necessary to protect the goodwill or other business interest of the promisee, and the promisee [is seeking] to enforce the covenant to a greater extent than [is] necessary to protect the goodwill or other business interest of the promisee . . . ." TEX. BUS & COM. CODE § 15.51.

**Count 3 — Breaches of Contract**

20.     Cantrell and B&V entered into an agreement for her to receive deferred compensation upon her retirement from B&V after completing twenty-one years of service.

21.     Cantrell fulfilled her obligations under the agreement, entitling her to approximately $10 million over the span of the next ten years.  B&V, however, has unequivocally stated that it will not pay Cantrell any of the deferred compensation, and thus, has anticipatorily repudiated its contractual obligations to Cantrell.

22.     Further, B&V and Cantrell entered into an agreement that Cantrell would receive compensation for her services during her employment.  However, B&V has breached this agreement by unlawfully withholding approximately $21,394.23 of compensation that Cantrell rightfully earned.

23.     Cantrell has and will incur injuries and is entitled to recover damages, including, but not limited to, actual and consequential damages, attorney's fees, costs of court, and pre- and post-judgment interest.

**Count 4 — Quantum Meruit**

24.     Cantrell provided valuable services to B&V for the benefit of B&V.  Specifically, Cantrell provided tax services to B&V's clients.

25.     B&V accepted Cantrell's services and B&V had notice that Cantrell expected to be provided compensation for her services.

26.     Cantrell has incurred injuries and is entitled to recover damages from B&V, including, but not limited to, actual damages in the form of the reasonable value of the services Cantrell provided to B&V, attorney's fees, costs of court, and pre- and post-judgment interest.

**Count 5 — Texas Payday Act**

27.     As Cantrell's previous employer, B&V was obligated under the Texas Payday Act to timely pay her after the termination of her employment.  TEX. LAB. CODE § 61, et seq.  The Texas Payday Act states that "[a]n employer shall pay in full an employee who is discharged from employment not later than the sixth day after the date the employee is discharged."  TEX. LAB. CODE § 61.014.

28.     B&V has failed to pay Cantrell approximately $21,394.23 of her earned wages and benefits.  By improperly refusing to pay Cantrell the wages and benefits earned and owed, B&V is in violation of the Act.  Its failure to pay is intentional as it refused to pay after being notified in writing that its actions were unlawful under the Texas Payday Act.

### G.     ATTORNEYS' FEES

29.     Due to B&V's breaches of contract and nonpayment of wages for services rendered, Cantrell has been forced to retain the services of the undersigned law firm to represent her in this action. Cantrell, therefore, also asks this Court to award her reasonable and necessary attorney's fees and costs under Section 38.001 of the Texas Civil Practices and Remedies Code, Section 15.51 of the Texas Business and Commerce Code, and Chapter 37 of the Texas Civil Practices and Remedies Code.

### H.     CONDITIONS PRECEDENT

30.     All conditions precedent have been performed or have occurred as required by Texas Rule of Civil Procedure 54.

### I.     REQUEST FOR TRIAL BY JURY

31.     Cantrell hereby makes demand for trial by jury in connection with her claims.

### J.     PRAYER

32.     For these reasons, Plaintiff Cantrell asks that Defendant be cited to appear and answer, and that Plaintiff, after a trial, obtain judgment against Defendant for:

a.     Actual damages in a sum in excess of the minimum jurisdictional limit of this Court;

b.     Pre- and post-judgment interest as allowed by law;

c.      Reasonable and necessary attorney's fees;

d.      Costs of suit; and

e.      All other relief at law or in equity to which Plaintiff is justly entitled.

Respectfully, submitted,

**STEELE STURM, PLLC**

CHARLES STURM
Texas Bar No. 24003020
Bank of America Center
700 Louisiana, 48th Floor
Houston, Texas 77002
Telephone: (713) 659-2600
Facsimile: (713) 659-2601

**ATTORNEYS FOR PLAINTIFF,
CAROL A. CANTRELL**

2012-04331 / Court: 055

**EMPLOYMENT AGREEMENT**

**BETWEEN**

**BRIGGS & VESELKA CO.**

**AND**

**CAROL CANTRELL**

Unofficial Copy Office of Chris Daniel District Clerk

**TABLE OF CONTENTS**

ARTICLE I      DEFINITIONS .................................................................... 1

   1.1      Definitions .......................................................................... 1

   1.2      Construction ....................................................................... 3

ARTICLE II      TERMS AND SCOPE OF EMPLOYMENT ................................ 3

   2.1      Employment ........................................................................ 3

   2.2      Scope of Employment ......................................................... 3

   2.3      Period of Employment ........................................................ 4

   2.4      Obligations Upon Termination ............................................. 4

ARTICLE III      COMPENSATION, EXPENSES, AND BENEFITS ................... 5

   3.1      Compensation ..................................................................... 5

   3.2      Adjustments Upon Termination ............................................. 5

   3.3      Vacation .............................................................................. 5

   3.4      Expenses ............................................................................ 6

   3.5      Employee Benefits .............................................................. 6

ARTICLE IV      AGREEMENT NOT TO COMPETE .................................... 6

   4.1      Agreement Not to Compete ................................................. 6

   4.2      Noncompetition Period ........................................................ 6

   4.3      Injunction ............................................................................ 7

   4.4      Non-Disclosure or Solicitation of Employer's Clients ............ 7

   4.5      Ancillary Covenants ............................................................ 7

   4.6      Reasonableness of Agreement Not to Compete Terms ......... 7

ARTICLE V      DISCLOSURES BY EMPLOYEE ........................................ 8

   5.1      Disclosure of Work-Product to Employer .............................. 8

   5.2      Non-Disclosure of Confidential Information to Other Persons .......... 8

ARTICLE VI      DEFERRED COMPENSATION .......................................... 8

   6.1      Deferred Compensation ...................................................... 8

   6.2      Termination Event ............................................................... 9

   6.3      Deferred Compensation Amount .......................................... 9

   6.4      Pay-Out Period ................................................................... 9

   6.5      Payment to Beneficiary ........................................................ 9

   6.6      Severance Pay Upon Termination Without Cause ................. 10

6.7     Forfeiture Upon Competing With the Employer or Terminated With Cause...... 10

ARTICLE VII       MISCELLANEOUS ................................................................. 10

7.1     Legal Fees and Expenses ............................................................ 10

7.2     Assignment ............................................................................... 11

7.3     Successors ................................................................................ 11

7.4     Entire Agreement ...................................................................... 11

7.5     Governing Law .......................................................................... 11

7.6     Waiver ....................................................................................... 11

7.7     Severability ............................................................................... 11

7.8     Notices ...................................................................................... 11

7.9     Entire Agreement ...................................................................... 12

# EMPLOYMENT AGREEMENT

THIS EMPLOYMENT AGREEMENT (this "Agreement"), dated as of this 1st day of December, 2000, is made and executed by and between BRIGGS & VESELKA CO., a Texas professional corporation (the "EMPLOYER"), and CAROL CANTRELL (the "EMPLOYEE").

## W I T N E S S E T H:

**WHEREAS,** the EMPLOYER desires to obtain the services of the EMPLOYEE, and the EMPLOYEE desires to be employed by the EMPLOYER upon the terms and conditions hereinafter set forth.

**NOW, THEREFORE,** in consideration of the premises, the agreements herein contained and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree that this Agreement is hereby effective as of the date hereof as follows:

## ARTICLE I

## DEFINITIONS

1.1   **Definitions.**  The following definitions shall be applicable to the terms set forth below as used in this Agreement:

"*Adjusted Net Profit*" shall mean the EMPLOYER'S gross revenue less ordinary expenses other than current Employee-Shareholders' salaries determined under the EMPLOYER'S ordinary accounting method.

"*Affiliate*" shall mean any partnership, limited partnership, foreign limited partnership, limited liability company, corporation, or any other entity in which the EMPLOYER, directly or indirectly, has an interest.  The term "Affiliate" shall include, but is not limited to, Johnson & Bender Insurance Services, LLC, a Texas limited liability company, and Johnson & Bender Financial Advisors, LLC, a Texas limited liability company.

"*Aggregate Quarterly Deferred Compensation Payment*" shall mean the amount of the EMPLOYER'S aggregate quarterly deferred compensation payable to all former Employee-Shareholders under similar employment contracts with the EMPLOYER.

"*Agreement Not to Compete*" shall mean the EMPLOYEE'S agreement not to compete with the EMPLOYER as specified in Article IV.

"*Average Compensation*" shall mean the sum of the EMPLOYEE'S W-2 compensation paid by the EMPLOYER for the five (5) calendar years preceding the Termination Event divided by five (5).

"*Beneficiary*" shall mean the Person or Persons designated, and alternates thereto, on the EMPLOYEE'S Designation of Beneficiary attached hereto, which may be changed by the EMPLOYEE at anytime upon delivery to the EMPLOYER of a Designation of Beneficiary revoking all prior designations and designating another Person or Persons in substantially the form on *Exhibit A*. If no such Person is designated or no such designated Person exists on the date of the EMPLOYEE'S death, then the term "Beneficiary" shall mean the EMPLOYEE'S surviving spouse and, upon her death, her legal representative. In the event there is no designated Person or surviving spouse on the date of the EMPLOYEE'S death, the term "Beneficiary" shall mean the EMPLOYEE'S legal representative.

"*Board of Directors*" shall mean the Board of Directors of BRIGGS & VESELKA CO., a Texas professional corporation, and any successor thereto.

"*Creditable Service*" shall mean the EMPLOYEE'S full years of employment with the EMPLOYER, on or after September 30, 2000, including allowed sick and vacation days and approved leave of absences of less than three (3) months, and other creditable service, if applicable, which for this Agreement shall be ten (10) years of service as of September 30, 2000.

"*Disability*" shall mean the EMPLOYEE'S inability to perform normal duties of employment because of medically determined physical or mental impairment for a twelve (12) month period. If there is any dispute between the EMPLOYER and the EMPLOYEE (or the EMPLOYEE'S legal representative) as to the disability of the EMPLOYEE at any time, the determination of disability shall be made by a physician agreed upon by the EMPLOYER and the EMPLOYEE (or the EMPLOYEE'S legal representative), or if a physician is not agreed upon within ten (10) days after a written request for the designation of a physician by either party to the other, then by two (2) physicians, one designated by the EMPLOYER and the other by the EMPLOYEE (or the EMPLOYEE'S legal representative). If the two (2) physicians cannot agree as to whether the EMPLOYEE is disabled, they shall appoint a third physician and the opinion of the majority shall be final and binding. In determining whether the EMPLOYEE has been disabled for twelve (12) months, different periods of disability separated by the EMPLOYEE'S resumption of duties of employment shall be aggregated if no more than three (3) months have elapsed from the immediately preceding period of disability and the current period of disability is related in cause to the immediately preceding period of disability.

"*Employee-Shareholders*" shall mean each Person who is or was an employee and shareholder of the EMPLOYER.

"*Installment Amount*" shall have the meaning given such term in Section 6.1.

"*Limitation Amount*" shall mean the amount determined in Section 6.1.

"*Noncompetition Period*" shall mean the period specified in Section 4.2.

"*Period of Employment*" shall mean the period specified in Section 2.3.

"*Person*" shall mean any individual, partnership, limited partnership, foreign limited partnership, limited liability company, trust, estate, corporation, custodian, trustee, executor, administrator, nominee, or any other entity in its own or representative capacity.

"*Resignation*" or "*Resigns*" shall mean the effective date of a letter of resignation, or other method of communicating the same, tendered by the EMPLOYEE to the EMPLOYER.

"*Retirement*" shall mean the EMPLOYEE'S Resignation on or after the date her Vested Percentage is equal to at least eighty percent (80%).  If the EMPLOYEE Resigns prior to her Vesting Percentage equaling at least eighty percent (80%), such Resignation is not a Retirement, and the EMPLOYEE shall not be entitled to the deferred compensation provided for in Article VI.

"*Severance Payment*" shall mean the amount determined in Section 6.6.

"*Termination Event*" shall mean the event specified in Section 6.2.

"*Vested Percentage*" shall have the meaning given such term in Section 6.3.

"*With Cause*" shall mean the commission by the EMPLOYEE of an act constituting a dishonest or other act of material misconduct, or a fraudulent act or a felony under the laws of any state or of the United States to which the EMPLOYER or EMPLOYEE is subject, or the commission of any act which results (or is intended to result directly or indirectly) in the EMPLOYEE'S substantial gain or personal enrichment to the detriment of the EMPLOYER.

Other terms defined herein shall have the meanings so given them.

1.2     **Construction.**  Whenever the context requires, the gender of all words used in this Agreement include the masculine, feminine, and neuter.  Unless otherwise expressly provided herein, all references to Articles or Sections refer to Articles and Sections of this Agreement, and Exhibits refer to Exhibits attached hereto, each of which is made a part hereof for all purposes.

## ARTICLE II

## TERMS AND SCOPE OF EMPLOYMENT

2.1     **Employment.**  Subject to the terms and conditions hereinafter set forth, the EMPLOYER hereby agrees to employ the EMPLOYEE, and the EMPLOYEE hereby agrees to serve the EMPLOYER in the capacity and for the Period of Employment specified herein.

2.2     **Scope of Employment.**  During the Period of Employment hereunder, the EMPLOYER employs the EMPLOYEE as a certified public accountant and to perform such other financial and consulting services required by the EMPLOYER.  In that connection, the EMPLOYEE will:

(a)  Devote her full time, attention, and energies to the business of the EMPLOYER and will diligently and to the best of her ability perform all duties incident to her employment hereunder;

(b)  Use her best efforts to promote the interests and goodwill of the EMPLOYER; and

(c)  Perform such other duties commensurate with her employment as the Board of Directors or officers of the EMPLOYER may from time-to-time assign to him.

The foregoing shall not be construed as preventing the EMPLOYEE from making investments in or performing other services for other businesses or enterprises provided such investments or other services do not require the provision of substantial services by the EMPLOYEE to the operations or the affairs of such businesses or enterprises such that the provision thereof would interfere in any respect with the performance of the EMPLOYEE'S duties hereunder and such other businesses or enterprises do not compete with the business of the EMPLOYER as described in Section 4.1.

2.3   **Period of Employment.**   The "Period of Employment," as used herein, shall mean a period commencing on the date hereof and terminating on the occurrence of any of the following events, resulting in the immediate termination of the Period of Employment, but shall not result in the termination of this Agreement:

(a)  The death of the EMPLOYEE;

(b)  The Disability of the EMPLOYEE;

(c)  The Resignation of the EMPLOYEE;

(d)  The termination of the EMPLOYEE'S employment with the EMPLOYER by a majority vote of the Board of Directors With Cause; or

(e)  The termination of the EMPLOYEE'S employment with the EMPLOYER by a majority vote of the Board of Directors for any reason other than With Cause.

2.4   **Obligations Upon Termination.**   The EMPLOYEE further agrees that upon termination of the Period of Employment he will not take with him or retain, without the prior written authorization of EMPLOYER, any papers, files, procedural or audit manuals, client lists, client account analyses (including, without limitation, accounts receivable agings, client payment histories and client account activity reports), fee schedules or other documents or copies thereof belonging to EMPLOYER or to any Affiliate of EMPLOYER, or to any client of the EMPLOYER, or any materials, supplies, equipment or furnishings belonging to the EMPLOYER or to any Affiliate of the EMPLOYER, or any other confidential information of any kind belonging to the EMPLOYER or any Affiliate of the EMPLOYER.   In the event

of a breach or threatened breach by the EMPLOYEE of the provisions of this Section 2.4, the EMPLOYEE shall return to the EMPLOYER all confidential information then held by the EMPLOYEE, and the EMPLOYER and the EMPLOYEE agree that the remedy at law available to the EMPLOYER and its Affiliates would be inadequate and that the EMPLOYER and its Affiliates shall be entitled to an injunction, without the necessity of posting bond therefor, restraining the EMPLOYEE from disclosing, in whole or in part, such confidential information.   Nothing herein shall be construed as prohibiting the EMPLOYER and its Affiliates from pursuing any other remedies, in addition to the injunctive relief available under this Section 2.4, for such breach or threatened breach, including the recovery of damages from the EMPLOYEE.

## ARTICLE III

## COMPENSATION, EXPENSES, AND BENEFITS

3.1   **Compensation.**  As compensation for her services hereunder and in consideration of her Agreement Not to Compete, the EMPLOYER shall:

    (a)   During the Period of Employment pay the EMPLOYEE, subject to the terms and conditions of this Agreement a base salary at the rate of not less than $102,000 per year, which may be modified by written agreement between the EMPLOYEE and the EMPLOYER, payable in accordance with the normal payroll practices of the EMPLOYER;

    (b)   During the Period of Employment as additional compensation for services hereunder, the EMPLOYEE shall be entitled to an annual bonus in amount as shall be determined by the Board of Directors for each of the EMPLOYER'S fiscal years ending after the date hereof; and

    (c)   Pay the EMPLOYEE the Deferred Compensation Amount as provided in Article VI.

3.2   **Adjustments Upon Termination.**   In the event of termination of the Period of Employment for any reason specified in Section 2.3 above, the EMPLOYER shall no longer be obligated to make the payments or to provide the benefits specified in this Article III other than the Deferred Compensation Amount as provided in Article VI; *provided, however,* any payments payable under Article III which shall have been earned but not yet paid shall be paid by the EMPLOYER to the EMPLOYEE, and the EMPLOYEE shall pay any amount or amounts then owed by the EMPLOYEE to the EMPLOYER.

3.3   **Vacation.**  During the Period of Employment, the EMPLOYEE shall be entitled to sick leave, holidays, and at least four (4) weeks of vacation annually, all in accordance with the regular policy of the EMPLOYER, during which time her compensation shall be paid in full.   Each such vacation shall be taken by the EMPLOYEE at such times as may be mutually agreed upon by the EMPLOYEE and EMPLOYER.

3.4     **Expenses.**  In accordance with the EMPLOYER'S ordinary policies, the EMPLOYER agrees that during the Period of Employment it will reimburse the EMPLOYEE for out-of-pocket expenses reasonably incurred by him in connection with the performance of her service hereunder upon the presentation by the EMPLOYEE of an itemized periodic accounting of such expenditures, including receipts where required by federal income tax regulations; *provided, however*, the EMPLOYEE is expected to incur certain expenses related to her employment with the EMPLOYER that will not be reimbursable.

3.5     **Employee Benefits.**  During the Period of Employment, the EMPLOYEE shall, upon satisfaction of any eligibility requirements with respect thereto, be entitled to participate in all employee benefit plans of the EMPLOYER, including without limitation those medical, dental, accidental death, and dismemberment, and long-term disability plans of the EMPLOYER now or hereafter in effect that are made available to employees of the EMPLOYER.

**ARTICLE IV**

**AGREEMENT NOT TO COMPETE**

4.1     **Agreement Not to Compete.**  The EMPLOYEE agrees not to compete, directly or indirectly, with the EMPLOYER or its Affiliates either as an employee, employer, consultant, agent, principal, partner, stockholder, corporate officer, director, or in any other individual or in any other representative capacity, by engaging or participating in any business that is engaged in the EMPLOYER'S or its Affiliate's business or proposed business within fifty (50) miles where the EMPLOYER or its Affiliate engages or proposes to engage in business at the time of the termination of the Period of Employment.  The EMPLOYEE represents to the EMPLOYER that the enforcement of the restriction contained in this Article IV would not be unduly burdensome to the EMPLOYEE and the EMPLOYEE has agreed to this Article IV in order to induce the EMPLOYER to provide for the Period of Employment as set forth in Article II, the deferred compensation set forth in Article VI, and other consideration provided in this Agreement.

4.2     **Noncompetition Period.**  The EMPLOYEE agrees not to compete with the EMPLOYER or its Affiliates as provided in Section 4.1 for the period (the "Noncompetition Period") (i) during the Period of Employment and (ii) in the event of a termination of the Period of Employment upon the occurrence of an event set forth in Section 2.3 (b), (c), or (d) hereof, commencing upon the occurrence of such event set forth in Section 2.3 and ending one (1) year from such commencement, in each case unless otherwise extended pursuant to the terms hereof.  If EMPLOYEE violates any covenant contained in this Article IV and the EMPLOYER brings legal action for injunctive or other relief, the EMPLOYER shall not, as a result of the time involved in obtaining the relief, be deprived of the benefit of the full period of any such covenant.  Accordingly, the covenants of the EMPLOYEE contained in this Article IV shall be deemed to have durations as specified above, which periods shall commence upon the later of (i) the termination of the Period

of Employment as provided in Section 2.3 (b), (c), or (d) and (ii) the date of entry by a court of competent jurisdiction of a final judgment enforcing the covenants of the EMPLOYEE in this Article IV.  Further, during any period in which the EMPLOYEE is in breach of this Agreement Not to Compete, the time period of this covenant shall be extended for an amount of time that the EMPLOYEE is in breach hereof.

4.3   **Injunction.**  The EMPLOYEE agrees that a breach or violation of the Agreement Not to Compete under this Article IV by such EMPLOYEE shall entitle the EMPLOYER, as a matter of right, to an injunction issued by any court of competent jurisdiction restraining any further or continued breach or violation of this covenant.  Such right to an injunction shall be cumulative and in addition to, and not in lieu of, any other remedies to which the EMPLOYER may show itself justly entitled.

4.4   **Non-Disclosure or Solicitation of EMPLOYER's Clients.**  In addition to the restrictions set forth in Section 4.1, the EMPLOYEE shall not for the Noncompetition Period, either directly or indirectly, (i) make known to any Person that is engaged in the EMPLOYER'S or its Affiliate's business or proposed business on the termination of the Period of Employment, the names and addresses of any of the clients of the EMPLOYER or its Affiliates or contacts of the EMPLOYER or its Affiliates or any other information pertaining to such Persons or (ii) call on, solicit or take away, or attempt to call on, solicit or take away any of the clients of the EMPLOYER or its Affiliates on whom the EMPLOYEE called or with whom the EMPLOYEE became acquainted during the EMPLOYEE'S association with the EMPLOYER or its Affiliates, whether for the EMPLOYEE or for any other Person.

4.5   **Ancillary Covenants.**  The representation and covenants contained in this Article IV on the part of the EMPLOYEE will be construed as ancillary to and independent of any other provision of this Agreement, and the existence of any claim or cause of action of the EMPLOYEE against the EMPLOYER or any Affiliate, officer, director, or shareholder of the EMPLOYER, whether predicated on this Agreement or otherwise, shall not constitute a defense to the enforcement by the EMPLOYER of the covenants of the EMPLOYEE contained in this Article IV.  In addition, the provisions of this Article IV shall continue to be binding upon the EMPLOYEE in accordance with its terms, notwithstanding the termination of the Period of Employment as provided in Section 2.3 (b), (c), or (d).

4.6   **Reasonableness of Agreement Not to Compete Terms.**  The parties to this Agreement agree that the limitations contained in this Article IV with respect to geographic area, duration, and scope of activity are reasonable. However, if any court shall determine that the geographic area, duration, or scope of activity of any restriction contained in this Article IV is unenforceable, it is the intention of the parties that such restrictive covenant set forth herein shall not thereby be terminated, but shall be deemed amended to the extent required to render it valid and enforceable.

# ARTICLE V

## DISCLOSURES BY EMPLOYEE

5.1     **Disclosure of Work-Product to EMPLOYER.**  During the Period of Employment, the EMPLOYEE will disclose to EMPLOYER all ideas and business plans developed by him during such period that relate directly to the business of the EMPLOYER or its Affiliates. Additionally, all patents, formulae, inventions, processes, copyrights, proprietary information, trademarks or trade names, or future improvements to patents, formulae, inventions, processes, copyrights, proprietary information, trademarks or trade names, developed or completed by the EMPLOYEE during the Period of Employment (collectively, the "Items") shall be promptly disclosed to the EMPLOYER, and the EMPLOYEE shall execute such instruments of assignment of the Items to the EMPLOYER as the EMPLOYER shall request.  The EMPLOYEE acknowledges that a remedy at law for any breach by him of the provisions of this Section 5.1 would be inadequate, and the EMPLOYEE hereby agrees that the EMPLOYER shall be entitled to injunctive relief in case of any such breach.

5.2     **Non-Disclosure of Confidential Information to Other Persons.**  The EMPLOYER will disclose to the EMPLOYEE confidential information of the EMPLOYER and/or of certain Affiliates of the EMPLOYER, and the EMPLOYEE recognizes and acknowledges that all such information constitutes valuable, special, and unique property of the EMPLOYER and its Affiliates.  The EMPLOYEE agrees that he will not, without the prior written consent of the EMPLOYER, disclose or authorize or permit anyone under her direction to disclose to anyone not properly entitled thereto any of such confidential information.  For purposes of the immediately preceding sentence, Persons properly entitled to such information shall be (i) the Board of Directors and such officers, employees, and agents of the EMPLOYER or any Affiliate thereof to whom such information is furnished in the normal course of business under established policies approved by the EMPLOYER and (ii) such outside parties as are legally entitled to or are customarily furnished such information, including banking, lending, collection, accounting, and data processing institutions or agencies who or which are provided such information in the normal course of business of the EMPLOYER.

# ARTICLE VI

## DEFERRED COMPENSATION

6.1     **Deferred Compensation.**  Upon occurrence of the Termination Event, the EMPLOYER agrees to pay the EMPLOYEE the Deferred Compensation Amount in forty (40) equal installments (the "Installment Amount"), payable on the fifteenth of the month following the end of each calendar quarter during the Pay-Out Period; *provided, however,* in no event may the EMPLOYER'S Aggregate Quarterly Deferred Compensation Payment in any quarter exceed twenty five percent (25%) of the EMPLOYER'S Adjusted Net Profit for the

previous fiscal year ended September 30 divided by four (4) (the "Limitation Amount"). If the Aggregate Quarterly Deferred Compensation Payment for any quarter would exceed the Limitation Amount, the EMPLOYEE's Installment Amount shall be reduced to an amount equal to her proportionate share of the EMPLOYER's Aggregate Quarterly Deferred Compensation Payment for such quarter times the Limitation Amount. In the event the EMPLOYEE's Installment Amount is reduced by application of previous sentence, such reduced amount shall be added to the EMPLOYEE's Installment Amount due in subsequent quarters until paid, provided that each subsequent quarter's payment will also be subject to the Limitation Amount.

6.2   **Termination Event.**  The Termination Event shall be the first of the following events to occur:

   (a)   The Retirement of the EMPLOYEE;

   (b)   The Disability of the EMPLOYEE while employed;

   (c)   The death of the EMPLOYEE while employed; or

   (d)   The termination of the EMPLOYEE's employment with the EMPLOYER by a majority vote of the Board of Directors for any reason other than With Cause.

6.3   **Deferred Compensation Amount.**  The Deferred Compensation Amount shall be equal to the product of four (4) times the EMPLOYEE's Average Compensation multiplied by her Vested Percentage.  The EMPLOYEE's Vested Percentage and Average Compensation shall be determined as of the date of the Termination Event and shall not be affected by the subsequent occurrence of the other events listed in Section 6.2.  After serving twenty (20) years of Creditable Service, the EMPLOYEE's Vested Percentage shall be eighty percent (80%), and her Vested Percentage shall increase an additional ten percent (10%) for each of the following two (2) years at which time the EMPLOYEE's Vested Percentage shall be one hundred percent (100%).  However, if during the Period of Employment the EMPLOYEE dies or incurs a Disability, the EMPLOYEE's Vested Percentage shall immediately become one hundred percent (100%).

6.4   **Pay-Out Period.**  The Pay-Out period shall begin on the fifteenth day of the month following the end of the calendar quarter in which the Termination Event occurs and shall end ten (10) years later; *provided, however,* in the event there is any remaining balance on the Deferred Compensation Amount due at the end of the Pay-Out Period, the Pay-Out Period shall continue until such balance is paid, subject to the limitations contained in Section 6.1, and such remaining balance shall be treated as if it were the EMPLOYEE's Installment Amount.

6.5   **Payment to Beneficiary.**  If the Termination Event is the death of the EMPLOYEE or the EMPLOYEE dies during the Pay-Out Period, the EMPLOYER shall pay the subsequent

Installment Amount(s) to the EMPLOYEE'S Beneficiary as if such Beneficiary were the EMPLOYEE; *provided, however*, the EMPLOYER, in its discretion, may pay the balance of the Deferred Compensation Amount to such Beneficiary in a single lump sum equal to the present value of such remaining balance discounted at the prime rate quoted by the depository bank of the EMPLOYER on the EMPLOYEE'S death; *provided, further*, in the event the EMPLOYER receives proceeds from a life insurance policy insuring the life of the EMPLOYEE, the EMPLOYER shall pay, to the extent such proceeds are uncommitted funds of the EMPLOYER, the balance of the Deferred Compensation Amount, discounted as provided in the proviso above, to the EMPLOYEE'S Beneficiary in a single lump sum and the remaining balance, if any, as otherwise provided herein.

6.6     **Severance Pay Upon Termination Without Cause.**  If the EMPLOYEE is terminated for any reason other than With Cause as provided in Section 2.3(c) and has more than five (5) years of Creditable Service at the time of such termination, the EMPLOYER shall pay the EMPLOYEE an amount equal to the EMPLOYEE'S base salary provided in Section 3.1(a), as such amount may be amended at the time of such termination (the "Severance Payment").  The EMPLOYER shall pay the Severance Payment to the EMPLOYEE in equal installments over a twelve (12) month period in accordance with the normal payroll practices of the EMPLOYER; *provided, however*, the EMPLOYER may, in its discretion, pay the remaining balance of the Severance Payment in a lump sum at anytime.

6.7     **Forfeiture Upon Competing With the EMPLOYER or Terminated With Cause.**  If during the Pay-Out Period the EMPLOYEE competes, directly or indirectly, with the EMPLOYER as an employee, employer, consultant, agent, principal, partner, stockholder, corporate officer, director, or in any other individual or in any other representative capacity, by engaging or participating in any business that is engaged in the EMPLOYER'S or its Affiliate's business or proposed business within fifty (50) miles where the EMPLOYER or its Affiliate engages or proposes to engage in business at the time of the Termination Event, the EMPLOYEE forfeits all remaining balance of the Deferred Compensation Amount outstanding as of the date he begins engaging in such competition, and the EMPLOYER is relieved of its obligation to make future payments to the EMPLOYEE under this Article VI.  This forfeiture shall be in addition to, and not in lieu of, any additional right the EMPLOYER may have under this Agreement or as provided by law.  Furthermore, if the EMPLOYEE is terminated With Cause as provided in Section 2.3(d), the EMPLOYEE forfeits all rights he may otherwise have under this Article VI.

## ARTICLE VII

## MISCELLANEOUS

7.1     **Legal Fees and Expenses.**  In the event that either of the parties contests the validity or enforceability of any of the provisions of this Agreement, then such contesting party hereby agrees to pay in a timely and prompt manner any and all legal fees and expenses incurred by the other party from time to time as a result of such contest; *provided,*

*however,* nothing contained in this Section 7.1 shall obligate the EMPLOYER to pay any legal fees or expenses incurred by the EMPLOYEE in connection with any litigation by the EMPLOYER against the EMPLOYEE to enforce the terms of this Agreement against the EMPLOYEE.

7.2    **Assignment.** This Agreement is a personal employment contract, and the rights, interests, and obligations of the EMPLOYEE may not be sold, transferred, assigned, pledged, or hypothecated, directly or indirectly, or by operation of law or otherwise.

7.3    **Successors.** This Agreement shall inure to the benefit of and be binding upon the EMPLOYER and its successors and assigns and upon the EMPLOYEE and her legal representatives.

7.4    **Entire Agreement.** This Agreement, which contains the entire contractual understanding between the parties, may not be changed orally, but only by a written instrument signed by the EMPLOYEE and the EMPLOYER.

7.5    **Governing Law.** This Agreement shall be governed by and construed in accordance with the laws of the State of Texas, and EMPLOYEE agrees to subject himself to the jurisdiction of the Southern District of Texas.

7.6    **Waiver.** The waiver of any breach of any term or condition of this Agreement shall not be deemed to constitute the waiver of any other breach of the same or any other term or condition.

7.7    **Severability.** In the event any provision of this Agreement is found to be unenforceable or invalid, such provision shall be severable from this Agreement and shall not affect the enforceability or validity of any other provision contained in this Agreement

7.8    **Notices.** Any notices or other communications required or permitted hereunder shall be sufficiently given if sent by registered mail, postage prepaid, and

      (a)    if to the EMPLOYEE:

      _____

      _____

      (b)    if to the EMPLOYER:

      Briggs & Veselka Co.
      c/o J. Steven Awalt
      6565 West Loop South, Suite 800
      Bellaire, Texas 77401

The parties may change the above addresses to whom or to which such notice or other communication is to be given by specifying in writing to the other party such other address.  Any notice or communication required by this Agreement shall be deemed to have been given as of the date mailed.

7.9    **Entire Agreement.**  Other than that certain supplemental agreement attached hereto as *Exhibit B* between the EMPLOYER and the EMPLOYEE, this Agreement and the additional documents and agreements referred to herein constitute the entire agreement among the parties.  It supersedes any prior agreement or understandings among them, and it may not be modified or amended in any manner other than as set forth herein.

IN WITNESS WHEREOF, the EMPLOYER has caused this Agreement to be executed by its duly authorized officer, and the EMPLOYEE has executed this Agreement as of the date first above written.

**BRIGGS & VESELKA CO.,** EMPLOYER

By: _____

Name:   Johnny J. Veselka

Its:  President

_____, EMPLOYEE

Carol Cantrell

Unofficial Copy Office of Chris Daniel District Clerk

# EXHIBIT A

Unofficial Copy Office of Chris Daniel District Clerk

### Designation of Beneficiary

I, _____ (the "Employee"), revoke all prior designations of beneficiary I may have made in the past under that certain employment agreement dated _____ between Briggs & Veselka Co., a Texas professional corporation, and myself (the "Employment Agreement") and designate the following person[s] to be my beneficiar[y/ies] under Section 6.5 of the Employment Agreement in the percentage[s] designated to receive the remaining Installment Amounts (as determined in the Employment Agreement):

1.  Primary Beneficiary

Name: _____

Mailing Address: _____

Percentage: _____

2.  Primary Beneficiary

Name: _____

Mailing Address: _____

Percentage: _____

In the event that no above named beneficiary is in existence following the date of my death, then in such event, I designate the following person[s] to be contingent beneficiar[y/ies] under Section 6.5 of the Employment Agreement, in the percentage[s] designated:

1.  Contingent Beneficiary

Name: _____

Mailing Address: _____

Percentage: _____

2.  Contingent Beneficiary

Name: _____

Mailing Address: _____

Percentage: _____

If more than one beneficiary of the same class (primary or contingent) is designated but no percentage is specified, the beneficiaries shall have equal percentages.

If more than one beneficiary of the same class (primary or contingent) is designated, the portion of the remaining Installment Amounts which would have been received by a beneficiary who is not in existence following the date of my death will be added pro rata to the portion[s] distributed to the other beneficiar[y/ies] of the same class, unless one of the alternative distributions listed below is checked:

☐   The portion that would have been received by a deceased beneficiary shall be distributed to his or her descendants per stirpes who are living after the date of my death.

☐   The portion that would have been received by a deceased beneficiary will be distributed to the beneficiary's descendants who are living after the date of my death in equal shares.

If none of the named beneficiaries (both primary and contingent) are in existence after the date of my death, then I designate my surviving spouse, if any, and upon her [his]death, her [his] legal representative.  If no named beneficiary (both primary and contingent) or spouse is in existence after the date of my death, then I designate my legal representative.

Date:_____          _____

                                       Name:_____

SPOUSAL CONSENT


I, _____, am married to _____ (the "Employee").   I consent to his [or her] designation of the primary and contingent beneficiar[y/ies] listed above to receive the remaining Installment Amounts (as determined in the Employment Agreement).   I understand and acknowledge that the effect of this designation is that I will not receive any of the remaining Installment Amounts in the event of the Employee's death.


Date:_____


Name:_____

**EXHIBIT B**

Unofficial Copy Office of Chris Daniel District Clerk

5584353.2/ 08160267

# BRIGGS & VESELKA CO.

A PROFESSIONAL CORPORATION
*Certified Public Accountants and Business Advisors*
6565 West Loop South, Suite 800
Bellaire, Texas 77401

713.667.9147   Fax 713.667.1697
www.bvccpa.com

Bellaire / Houston

El Campo

December 1, 2000

Mr. W. Patrick and Ms. Carol Cantrell
3664 Inverness
Houston, TX 77019

RE: Supplement to Agreement and Plan of Merger ("Merger Agreement")
Employment Agreements ("Employment Agreements") and Stock
Redemption Agreement ("Redemption Agreement")

Dear Pat and Carol:

In connection with your entering into the above agreements between you and us and the other related agreements and instruments to be executed in connection with our business combination, we have all agreed that each of the above agreements is hereby supplemented and amended as follows:

1.  Notwithstanding any of the other provisions of the Employment Agreements or any of the other above agreements to the contrary, in the event that on or before the second anniversary of the Effective Time (as defined in the Merger Agreement) either one or both of you ceases(s) to be an employee of the Surviving Corporation (as defined in the Merger Agreement) for any reason other than death, disability or termination with cause (as defined in the Employment Agreements) and provided you give written notice at least 60 days prior to your resignation, then in such event (which is referred to herein as a "Special Termination") none of the provisions of Section 2.4 or Article IV of the terminated employee's Employment Agreement shall apply to such terminated employee from and after the date of such Special Termination; and after the date of any such Special Termination, the Surviving Corporation will either retain or deliver to such terminated employee all client files, work papers and similar materials relating to client representations, in each case as directed by any client providing instructions to the Surviving Corporation with regard thereto.

2.  In the event any Special Termination takes place, then in such event, notwithstanding the provisions of Article III of the Redemption Agreement, the Surviving Corporation shall have the obligation, not the option, to purchase the terminated employee's stock of the Surviving Corporation, and shall pay as consideration therefor one or more cash payments of the purchase price for such shares of stock as determined in accordance with the Redemption Agreement, the last of which such cash payment or payments shall be paid to the terminated employee not later than 120 days after the date of the Special Termination. Furthermore, any accounts receivable on Cantrell clients, determined from the clients contributed on the merger date, will be paid to the Cantrell's as collected by Briggs & Veselka Co. within 40 days after receipt as a salary continuation payment.



*independent member of*
BKR
*International*

Mr. W. Patrick and Ms. Carol Cantrell
December 1, 2000
Page Two

3.  In the event of a Special Termination, the parties further agree to use their good faith efforts to come to an arrangement that minimizes any loss suffered by each of them as a result of the Surviving Corporation's having entered into a four year lease and committed funds totaling approximately $288,000 to the merger.  The total cost of $288,000 will be amortized over 48 months at $6,000 per month so that if the Cantrell's left after 12 months, $72,000 would have been amortized leaving damages of $216,000. The unamortized portion constituting damages would further be mitigated to the extent that the cost incurred was fully utilized either by Briggs & Veselka Co., or through subleasing or other utilization of the space.  After 24 months the Special Termination Agreement would no longer apply.

The parties confirm and agree that the agreements set forth herein are entered into as an inducement to W. Patrick and Carol Cantrell to enter into the Merger Agreement, their respective Employment Agreements, the Redemption Agreement and the other related agreements and instruments, and that they would not have entered into such agreements or executed such instruments but for the binding obligations set forth herein.

Respectfully yours,

BRIGGS & VESELKA CO.

By: _____
    Johnny J. Veselka, President

Accepted and Agreed to as of the above date:

_____
W. Patrick Cantrell

_____
Carol Cantrell



2012-04331 / Court: 055

**Briggs & Veselka Co.**

A PROFESSIONAL CORPORATION

Certified Public Accountants and Business Advisors

January 13, 2012

**Via Registered Mail**

Carol Cantrell
c/o Charles A. Sturm
Steele Sturm PLLC
Bank of America Center
700 Louisiana, 48th Floor
Houston, Texas 77002

Re:    Removal as Director, Termination With Cause, Denial of Retirement Benefit &
Change in Notice Address

Dear Carol:

This letter is to inform you of the following:

1.    <u>Removal as Director</u>.   In accordance with Texas Business Organizations Code (the "TBOC") and the Restated Certificate of Formation of Briggs & Veselka Co., the shareholders of B&V holding a majority of B&V shares entitled to vote adopted a written consent in lieu of a special meeting to remove you as a director of B&V, a copy of which is attached as <u>Exhibit A</u>.   This notice is provided to you as required by Section 6.202(d) of the TBOC.

2.    <u>Termination With Cause</u>.   In accordance with the TBOC and the Amended and Restated Bylaws of Briggs & Veselka Co., the board of directors rejected your accelerated retirement from January 15, 2012, to January 3, 2012, and subject to the ratification by shareholders of B&V holding not less than 75% of the outstanding shares of stock of B&V, which ratification was obtained, terminated you "With Cause" (as defined in your employment agreement with B&V dated December 1, 2000 (the "<u>Employment Agreement</u>")).   Copies of the written consents of the board of directors terminating you With Cause (the "<u>Board Determination</u>") and the shareholders ratification thereof, respectively, are attached as <u>Exhibit B</u>.

3.    <u>Forfeiture of Retirement Benefit</u>.   As a result of being terminated by a majority vote of the Board of Directors (as defined in the Employment Agreement), your Period of Employment (as defined in the Employment Agreement) ended under Section 2.3(d) of the Employment Agreement on January 12, 2012.   As a result of being terminated under Section 2.3(d) of the Employment Agreement, you forfeit under Section 6.7 of the Employment Agreement all rights you had under Article VI of the Employment

77624118.1

HOUSTON OFFICE  713.667.9147 Tel. ■ 713.667.1697 Fax
6575 West Loop South, Suite 700 ■ Bellaire, Texas 77401 ■ www.bvccpa.com
Member of the Center for Public Company Audit Firms of the American Institute of Certified Public Accountants

Exhibit

B

Independent Member

**BKR**
INTERNATIONAL

Carol Cantrell c/o Charles A. Sturm
January 13, 2012
Page 2

Agreement to receive the Deferred Compensation Amount (as defined in the Employment Agreement) (the "Plan"). The reasons for your termination With Cause are set forth in the Board Determination. Our records indicate that under the terms of the Plan your Deferred Compensation Amount was approximately $1.2 million, which, subject to certain limitations, would have been paid to you in forty (40) equal installments on the fifteenth of the month following the end of each calendar quarter during the Pay-Out Period (as defined in the Employment Agreement) (the "Benefit"). Based on the foregoing, B&V regrets that it must deny any claim you make for the Benefit under the Plan. If you do not agree with the reasons for the denial, you may request a review of this decision within 60 days after the date of notice, which is the date of this letter under Section 7.8 of the Employment Agreement. Your request should be in writing, should state the basis for the disagreement and include any documents, data, questions, or comments you think are appropriate, and should be sent to the notice address as provided in paragraph 5 below. We have previously sent to you a copy of the Employment Agreement and enclosed herein is the Board Determination.

4.   Wage Offset. As a result of your attorney's letter dated January 3, 2012, contesting the validity and enforceability of the Employment Agreement, including the forfeiture provisions of the Plan, we have incurred attorneys' fees to respond to such contest. As a result, we are withholding the remaining balance of any compensation payable to you, which we have determined to be in the amount of $22,836 under the Employment Agreement, to offset our attorneys' fees which you are obligated to pay under Section 7.1 of the Employment Agreement.

5.   Notice. For purposes of notice and other communications to B&V under Section 7.8 of the Employment Agreement and until further notice, please direct all such notices and communications to:

Briggs & Veselka Co.
c/o M. Carter Crow
Fulbright & Jaworski L.L.P.
Fulbright Tower
Suite 5100
Houston, Texas  77010-3095

with a copy to:

Robert W. Phillpott
Fulbright & Jaworski L.L.P.
Fulbright Tower
Suite 5100
Houston, Texas  77010-3095

Carol Cantrell c/o Charles A. Sturm
January 13, 2012
Page 3


     For notices and other communications to B&V other than those related to the Employment Agreement, B&V's address beginning on January 23, 2012, will be Nine Greenway Plaza, Suite 1700, Houston, Texas 77046.

               Very truly yours,

               John C. Flatowicz, CPA

cc:  Robert W. Phillpott
     M. Carter Crow

Unofficial Copy Office of Chris Daniel District Clerk

77624118.1

# EXHIBIT A

Removal as Director
By Shareholders

Unofficial Copy Office of Chris Daniel District Clerk

**BRIGGS & VESELKA CO.**

WRITTEN CONSENT OF SHAREHOLDERS
IN LIEU OF SPECIAL MEETING

Pursuant to Section 6.202 of the Texas Business Organizations Code, as amended, and Section 8.1 of the Restated Certificate of Formation of Briggs & Veselka Co. (the "Certificate of Formation"), the undersigned, being shareholders holding a majority of the shares of Briggs & Veselka Co., a Texas corporation ("B&V"), entitled to vote, in lieu of a special meeting, the call and notice of which are hereby expressly waived, do hereby consent to the adoption of and adopt the resolutions attached hereto as Annex A.

This consent may be executed in counterparts, each of which shall be deemed an original, and all of which taken together shall constitute one instrument. A copy of this consent, signed and delivered by telecopy or other facsimile transmission, shall be considered an original, executed consent.

IN WITNESS WHEREOF, each of the undersigned has executed this consent on the date set forth below his or her name.

CHARLES F. WELLER
DATE: 1/11/2012

J. STEVEN AWALT
DATE: 1/11/12

GARY TROCHTA
DATE:

JOHN C. FLATOWICZ
DATE: 1/11/12

ANDREW J. KUNTZ
DATE: 1/12/2012

LAURA S. FREUDENBERGER
DATE: 1/11/12

MERESA S. MORGAN
DATE: 1/12/18

MARK R. SCHAAF
DATE: 1/11/12

KEVIN J. LOVINS
DATE: 1/11/12

DAVID R. PHELPS
DATE: 1/11/12

JASON C. SANDERS
DATE: 1/11/12

JAMES R. McDONALD
DATE: 1/12/12

C. KEVIN CHESSER
DATE: 1-11-12

SHEILA A. ENRIQUEZ
DATE: 1-11-12

77622675.2

## BRIGGS & VESELKA CO.

WRITTEN CONSENT OF SHAREHOLDERS
IN LIEU OF SPECIAL MEETING

Pursuant to Section 6.202 of the Texas Business Organizations Code, as amended, and Section 8.1 of the Restated Certificate of Formation of Briggs & Veselka Co. (the "Certificate of Formation"), the undersigned, being shareholders holding a majority of the shares of Briggs & Veselka Co., a Texas corporation ("B&V"), entitled to vote, in lieu of a special meeting, the call and notice of which are hereby expressly waived, do hereby consent to the adoption of and adopt the resolutions attached hereto as Annex A.

This consent may be executed in counterparts, each of which shall be deemed an original, and all of which taken together shall constitute one instrument. A copy of this consent, signed and delivered by telecopy or other facsimile transmission, shall be considered an original, executed consent.

IN WITNESS WHEREOF, each of the undersigned has executed this consent on the date set forth below his or her name.

CHARLES F. WELLER
DATE: 1/11/2012

GARY TROCHTA
DATE: 1/11/2012

ANDREW J. KUNTZ
DATE:

MERESA S. MORGAN
DATE:

KEVIN J. LOVINS
DATE:

JASON C. SANDERS
DATE: 1/11/12

C. KEVIN CHESSER
DATE: 1-11-12

J. STEVEN AWALT
DATE: 1/11/12

JOHN C. FLATOWICZ
DATE: 1/11/12

LAURA S. FREUDENBERGER
DATE: 1/11/12

MARK R. SCHAAF
DATE: 1/11/12

DAVID R. PHELPS
DATE: 1/11/12

JAMES R. McDONALD
DATE:

SHEILA A. ENRIQUEZ
DATE: 1-11-12

77622675.2

# BRIGGS & VESELKA CO.

### RESOLUTIONS OF THE SHAREHOLDERS

#### Removal of Carol Cantrell as a Director

WHEREAS, prior to the adoption of these resolutions, Carol Cantrell is a director of B&V;

WHEREAS, Section 3.05 of the Amended and Restated Bylaws of Briggs & Veselka Co. (the "Bylaws") provides that any director may be removed either for or without cause at any special meeting of the shareholders duly called and held for such purpose;

WHEREAS, Section 2.06 of the Bylaws generally provides that with respect to any matter, other than as provided in the Certificate of Formation, the Bylaws, or by law, the affirmative vote of the holders of a majority of the shares entitled to vote on the matter shall decide such matter;

WHEREAS, Section 8.1 of the Certificate of Formation provides that any action required, or that may, be taken ay any special meeting of the shareholders may be taken without a meeting, without prior notice and without a vote, if a consent or consents in writing, setting for the action so taken, is signed by the holder or holders of shares having not less than the minimum number of votes that would be necessary to take such action at a meeting at which holders of all shares entitled to vote on the action were present and voted;

WHEREAS, Carol Cantrell has previously communicated to B&V that she is resigning as an employee of B&V; and

WHEREAS, the shareholders executing this consent hold a majority of the shares of B&V entitled to vote and have determined that it is in the best interest of B&V for Carol Cantrell to be removed as a director of the board of directors of B&V immediately upon execution of this consent;

NOW THEREFORE, BE IT RESOLVED, that, pursuant to Section 3.05 of the Bylaws, Carol Cantrell is hereby removed as a director of the board of directors of B&V effective immediately;

RESOLVED FURTHER, that the proper officers of B&V and any person or persons designated and authorized so to act by any proper officer of the B&V are severally authorized to do and perform or cause to be done and performed for and in the name and on behalf of B&V, or otherwise, such other acts, to pay or cause to be paid on behalf of B&V such related costs and expenses, and to execute and deliver or cause to be executed and delivered such other notices, requests, demands, directions, consents, approvals, orders, applications, certificates, agreements, undertakings, supplements, amendments, further assurances or other instruments or communications, under the corporate seal of B&V, or otherwise, for and in the name and on behalf of B&V, or otherwise, as they or any of them may deem to be necessary or advisable to carry into effect the intent of the foregoing resolution or to comply with the requirements of the instruments approved and authorized by the foregoing resolution.

# EXHIBIT B

Termination "With Cause" By Board of Directors
& Shareholder Ratification

## BRIGGS & VESELKA CO.

UNANIMOUS WRITTEN CONSENT OF DIRECTORS
IN LIEU OF SPECIAL MEETING

Pursuant to Section 6.201 of the Texas Business Organizations Code, as amended, and Section 3.16 of the Amended and Restated Bylaws of Briggs & Veselka Co. (the "Bylaws"), the undersigned, being all the members of the Board of Directors of Briggs & Veselka Co., a Texas corporation ("B&V"), in lieu of a special meeting, the call and notice of which are hereby expressly waived, do hereby consent to the adoption of and adopt the resolutions attached hereto as Annex A.

This consent may be executed in counterparts, each of which shall be deemed an original, and all of which taken together shall constitute one instrument. A copy of this consent, signed and delivered by telecopy or other facsimile transmission, shall be considered an original, executed consent.

IN WITNESS WHEREOF, each of the undersigned has executed this consent on the date set forth below his or her name.

CHARLES F. WELLER
DATE: 1/12/2012

J. STEVEN A. WALT
DATE: 1/12/12

GARY TROCHTA
DATE:

JOHN C. FLATOWICZ
DATE: 1/12/12

ANDREW J. KUNTZ
DATE: 1/12/12

LAURA S. FREUDENBERGER
DATE: 1/12/12

MERESA S. MORGAN
DATE: 1/12/12

MARK R. SCHAAF
DATE:

KEVIN J. LOVINS
DATE: 1/12/2012

DAVID R. PHELPS
DATE: 1/12/12

JASON C. SANDERS
DATE: 1-12-12

JAMES R. McDONALD
DATE: 1/12/12

C. KEVIN CHESSER
DATE: 1-12-12

SHEILA A. ENRIQUEZ
DATE: 1/12/12

Official Copy Office of Chris Daniel District Clerk

77622375.3

**BRIGGS & VESELKA CO.**

UNANIMOUS WRITTEN CONSENT OF DIRECTORS
IN LIEU OF SPECIAL MEETING

Pursuant to Section 6.201 of the Texas Business Organizations Code, as amended, and Section 3.16 of the Amended and Restated Bylaws of Briggs & Veselka Co. (the "Bylaws"), the undersigned, being all the members of the Board of Directors of Briggs & Veselka Co., a Texas corporation ( "B&V"), in lieu of a special meeting, the call and notice of which are hereby expressly waived, do hereby consent to the adoption of and adopt the resolutions attached hereto as Annex A.

This consent may be executed in counterparts, each of which shall be deemed an original, and all of which taken together shall constitute one instrument. A copy of this consent, signed and delivered by telecopy or other facsimile transmission, shall be considered an original, executed consent.

IN WITNESS WHEREOF, each of the undersigned has executed this consent on the date set forth below his or her name.

_____
CHARLES F. WELLER
DATE:_____

_____
GARY TROCHTA
DATE: 1/12/12

_____
ANDREW J. KUNTZ
DATE:_____

_____
MERESA S. MORGAN
DATE:_____

_____
KEVIN J. LOVINS
DATE:_____

_____
JASON C. SANDERS
DATE:_____

_____
C. KEVIN CHESSER
DATE:_____

_____
J. STEVEN AWALT
DATE:_____

_____
JOHN C. FLATOWICZ
DATE:_____

_____
LAURA S. FREUDENBERGER
DATE:_____

_____
MARK R. SCHAAF
DATE:_____

_____
DAVID R. PHELPS
DATE:_____

_____
JAMES R. McDONALD
DATE:_____

_____
SHEILA A. ENRIQUEZ
DATE:_____

Unofficial Copy Office of Chris Daniel District Clerk

77622375.3

**BRIGGS & VESELKA CO.**

UNANIMOUS WRITTEN CONSENT OF DIRECTORS
IN LIEU OF SPECIAL MEETING

Pursuant to Section 6.201 of the Texas Business Organizations Code, as amended, and Section 3.16 of the Amended and Restated Bylaws of Briggs & Veselka Co. (the "Bylaws"), the undersigned, being all the members of the Board of Directors of Briggs & Veselka Co., a Texas corporation ( "B&V"), in lieu of a special meeting, the call and notice of which are hereby expressly waived, do hereby consent to the adoption of and adopt the resolutions attached hereto as Annex A.

This consent may be executed in counterparts, each of which shall be deemed an original, and all of which taken together shall constitute one instrument. A copy of this consent, signed and delivered by telecopy or other facsimile transmission, shall be considered an original, executed consent.

IN WITNESS WHEREOF, each of the undersigned has executed this consent on the date set forth below his or her name.

_____          _____
CHARLES F. WELLER                    J. STEVEN AWALT
DATE:_____             DATE:_____


_____          _____
GARY TROCHTA                         JOHN C. FLATOWICZ
DATE:_____             DATE:_____


_____          _____
ANDREW J. KUNTZ                      LAURA S. FREUDENBERGER
DATE:_____             DATE:_____


_____          _____
MERESA S. MORGAN                     MARK R. SCHAAF
DATE:_____             DATE:___1/12/12_____


_____          _____
KEVIN J. LOVINS                      DAVID R. PHELPS
DATE:_____             DATE:_____


_____          _____
JASON C. SANDERS                     JAMES R. McDONALD
DATE:_____             DATE:_____


_____          _____
C. KEVIN CHESSER                     SHEILA A. ENRIQUEZ
DATE:_____             DATE:_____

Unofficial Copy Office of Chris Daniel District

Annex A

**BRIGGS & VESELKA CO.**

RESOLUTIONS OF THE BOARD OF DIRECTORS

Termination of Carol Cantrell With Cause & Denial of Plan Benefits

WHEREAS, prior to the adoption of these resolutions, Carol Cantrell is a shareholder and an employee of B&V;

WHEREAS, Carol Cantrell entered into an employment agreement with B&V dated December 1, 2000 (the "Employment Agreement");

WHEREAS, in November of 2011, Carol Cantrell communicated to B&V that she was retiring from B&V as an employee effective January 15, 2012;

WHEREAS, after such communication, B&V obtained information, including emails and client communications (the "Indirect Information"), that Carol Cantrell appeared to be engaging directly or indirectly in the following activities which would be in violation of her Employment Agreement:

1.   Carol Cantrell appeared to be performing services (e.g., federal tax planning and tax return preparation) for clients of B&V that she provided to such clients in the past during her employment with B&V, and B&V's time records indicate that she was not providing such services in her capacity as an employee of B&V (but possibly for Cantrell & Cowan, PLLC);

2.   Barbara Nowotny appeared to be performing services (e.g., federal tax planning and tax return preparation) for clients of B&V that are the same as those services she previously rendered to such clients while employed by B&V and was doing so as an employee of a firm owned in whole or in part by Carol Cantrell and\or her husband Patrick Cantrell; and

3.   Both Carol Cantrell and Barbara Nowotny appeared to have called on clients of B&V that Carol Cantrell and Barbara Nowotny served at B&V in order to perform the same services (e.g., federal tax planning and tax return preparation) that both previously rendered to them for the benefit of B&V.

WHEREAS, as a result of receiving such Indirect Information, B&V delivered a letter to Carol Cantrell dated January 3, 2012 ("B&V's Notice Letter"), wherein B&V (i) explained that B&V had obtained information indicating the above actions may have taken place and\or that she may be contemplating taking such actions, (ii) warned her that such actions, if taken, violated her Employment Agreement, (iii) explained that such violations would result in the forfeiture of her retirement benefits contemplated in Article VI of the Employment Agreement, including if she were terminated "With Cause" (as defined in the Employment Agreement), and (iv) requested that Carol Cantrell meet with John Flatowicz to discuss such actions and to avoid such forfeiture;

WHEREAS, after receiving B&V's Notice Letter, Carol Cantrell's attorney delivered a letter ("Cantrell's Attorney's Letter") that (i) contested the validity and enforceability of certain provisions of the Employment Agreement and (ii) accelerated Carol Cantrell's retirement date to January 3, 2012 (the "Accelerated Retirement Date");

77622375.3                                         - 1 -

WHEREAS, on January 5, 2012, two days after B&V's Notice Letter and Carol Cantrell's Accelerated Retirement Date, B&V received in the mail an envelope that not only included a check paying a B&V invoice, but such envelope also included a check from Charco Promotional Products, Inc., a client of B&V ("Client"), payable to Cantrell & Cowan, PLLC ("C&C") and a copy of C&C's invoice showing that such payment was for services provided by Carol Cantrell rendered during November of 2011 ("C&C's Invoice"), well before her designated retirement date of January 15, 2012;

WHEREAS, since Carol Cantrell's attorney requested in Cantrell's Attorney's Letter that all communications with Carol Cantrell be directed to him, Client's check and the C&C Invoice were given to Carol Cantrell's attorney on January 6, 2012, and he was requested to deliver such check and the C&C Invoice to Carol Cantrell;

WHEREAS, B&V's attorneys requested Carol Cantrell's attorney to provide any explanation regarding the C&C Invoice that she had as to why she performed such services for Client through C&C and not B&V, but her attorney responded that he could not provide any response until after her originally designated retirement date of January 15, 2012, and the board of directors has determined that it is prudent to take the actions set forth in these resolutions prior to Carol Cantrell's originally designated retirement date of January 15, 2012;

WHEREAS, the Employment Agreement generally provides that during the period of employment Carol Cantrell agreed (i) to devote her "full time, attention, and energies to the business" of B&V and to use her "best efforts to promote the interests and goodwill" of B&V, (ii) not to compete, directly or indirectly, with B&V by engaging or participating in any business that B&V is engaged in, and (iii) not to solicit or take away, directly or indirectly, any of B&V's clients;

WHEREAS, C&C's Invoice is conclusive evidence that Carol Cantrell violated her agreements under the Employment Agreement since she was employed by B&V in November of 2011 and was at the same time providing services to Client for the benefit of C&C;

WHEREAS, Section 2.3(d) of the Employment Agreement provides that the Period of Employment (as defined in the Employment Agreement) may be terminated "by a majority vote of the Board of Directors With Cause" and "With Cause" is defined as:

"With Cause" shall mean the commission by [Carol Cantrell] of an act constituting a dishonest or other act of material misconduct, or a fraudulent act or a felony under the laws of any state or of the United States to which [B&V] or [Carol Cantrell] is subject, or the commission of any act which results (or is intended to result directly or indirectly) in [Carol Cantrell's] substantial gain or personal enrichment to the detriment of [B&V].

WHEREAS, based on the cumulative amount of Indirect Information that has been presented to and reviewed by the board of directors and the conclusive evidence reflected in C&C's Invoice, each member of the board of directors has determined that Carol Cantrell has taken actions that require that she be terminated With Cause to prevent further damage and injury to B&V;

WHEREAS, based on B&V's good faith attempt to warn Carol Cantrell that she may forfeit her retirement benefits by delivering B&V's Notice Letter and B&V's attempt to avoid such result by giving her such warning, the board of directors has determined that Carol Cantrell's acceleration of her retirement set forth in Cantrell's Attorney's Letter should be rejected since it would be inequitable to allow Carol Cantrell to avoid termination With Cause through such acceleration prior to B&V's receipt of conclusive evidence that she should be terminated With Cause; and

WHEREAS, upon being terminated With Cause by a majority vote of the board of directors, Carol Cantrell forfeits under Section 6.7 of the Employment Agreement all rights she has under Article VI of the Employment Agreement to receive the Deferred Compensation Amount (as defined in the Employment Agreement) (the "Plan"), which, subject to certain limitations, would have been paid to Carol Cantrell in forty (40) equal installments on the fifteenth of the month following the end of each calendar quarter during the Pay-Out Period (as defined in the Employment Agreement) (the "Benefit");

NOW, THEREFORE, BE IT RESOLVED, that, subject to ratification by the shareholders of B&V in accordance with the Bylaws, Carol Cantrell's acceleration of her retirement to January 3, 2012, is hereby denied, and based upon the cumulative amount of Indirect Information that has been presented to and reviewed by the board of directors and the conclusive evidence reflected in C&C's Invoice, Carol Cantrell is hereby terminated With Cause (the "With Cause Termination");

RESOLVED FURTHER, that the board of directors hereby directs the proper officers of B&V to submit the With Cause Termination to the shareholders of B&V for ratification in accordance with the Bylaws and hereby recommends that the shareholders of B&V ratify the With Cause Termination;

RESOLVED FURTHER, that, as a result of the With Cause Termination, B&V denies under the terms of the Plan Carol Cantrell's claim for the Benefit;

RESOLVED FURTHER, that the proper officers of B&V and any person or persons designated and authorized so to act by any proper officer of B&V are severally authorized to do and perform or cause to be done and performed for and in the name and on behalf of B&V or otherwise, such other acts, to pay or cause to be paid on behalf of B&V such related costs and expenses, and to execute and deliver or cause to be executed and delivered such other notices, requests, demands, directions, consents, approvals, orders, applications, certificates, agreements, undertakings, supplements, amendments, further assurances or other instruments or communications, under the corporate seal of B&V, or otherwise, for and in the name and on behalf of B&V, or otherwise, as they or any of them may deem to be necessary or advisable to carry into effect the intent of the foregoing resolutions or to comply with the requirements of the instruments approved and authorized by the foregoing resolutions; and

RESOLVED FURTHER, that all acts, transactions or agreements undertaken before the adoption of these resolutions by any of the officers of B&V in its name and on its behalf in connection with the foregoing matters are ratified, confirmed, and adopted by B&V.



## BRIGGS & VESELKA CO.

WRITTEN CONSENT OF SHAREHOLDERS
IN LIEU OF SPECIAL MEETING

Pursuant to Section 6.202 of the Texas Business Organizations Code, as amended, and Section 8.1 of the Restated Certificate of Formation of Briggs & Veselka Co., the undersigned, being shareholders of Briggs & Veselka Co., a Texas corporation ("B&V"), holding not less than 75% of the shares of B&V, in lieu of a special meeting, the call and notice of which are hereby expressly waived, do hereby consent to the adoption of and adopt the resolutions attached hereto as Annex A.

This consent may be executed in counterparts, each of which shall be deemed an original, and all of which taken together shall constitute one instrument.  A copy of this consent, signed and delivered by telecopy or other facsimile transmission, shall be considered an original, executed consent.

IN WITNESS WHEREOF, each of the undersigned has executed this consent on the date set forth below his or her name.

CHARLES F. WELLER
DATE: 1/14/2012

J. STEVEN AWALT
DATE: 1/12/12

GARY TROCHTA
DATE:

JOHN C. FLATOWICZ
DATE: 1/12/12

ANDREW J. KUNTZ
DATE: 1/12/12

LAURA S. FREUDENBERGER
DATE: 1/12/12

MERESA S. MORGAN
DATE: 1/12/12

MARK R. SCHAAF
DATE:

KEVIN J. LOVINS
DATE: 1/12/12

DAVID R. PHELPS
DATE: 1/12/12

JASON C. SANDERS
DATE: 1/12/12

JAMES R. McDONALD
DATE: 1/12/12

C. KEVIN CHESSER
DATE: 1-12-12

SHEILA A. ENRIQUEZ
DATE: 1/12/12

## BRIGGS & VESELKA CO.

### WRITTEN CONSENT OF SHAREHOLDERS
### IN LIEU OF SPECIAL MEETING

Pursuant to Section 6.202 of the Texas Business Organizations Code, as amended, and Section 8.1 of the Restated Certificate of Formation of Briggs & Veselka Co., the undersigned, being shareholders of Briggs & Veselka Co., a Texas corporation ("B&V"), holding not less than 75% of the shares of B&V, in lieu of a special meeting, the call and notice of which are hereby expressly waived, do hereby consent to the adoption of and adopt the resolutions attached hereto as Annex A.

This consent may be executed in counterparts, each of which shall be deemed an original, and all of which taken together shall constitute one instrument. A copy of this consent, signed and delivered by telecopy or other facsimile transmission, shall be considered an original, executed consent.

IN WITNESS WHEREOF, each of the undersigned has executed this consent on the date set forth below his or her name.

CHARLES F. WELLER
DATE:_____

J. STEVEN AWALT
DATE:_____

GARY TROCHTA
DATE:_____ 1/12/12

JOHN C. FLATOWICZ
DATE:_____

ANDREW J. KUNTZ
DATE:_____

LAURA S. FREUDENBERGER
DATE:_____

MERESA S. MORGAN
DATE:_____

MARK R. SCHAAF
DATE:_____

KEVIN J. LOVINS
DATE:_____

DAVID R. PHELPS
DATE:_____

JASON C. SANDERS
DATE:_____

JAMES R. McDONALD
DATE:_____

C. KEVIN CHESSER
DATE:_____

SHEILA A. ENRIQUEZ
DATE:_____

Unofficial Copy Office of Chris Daniel District Clerk

## BRIGGS & VESELKA CO.

### WRITTEN CONSENT OF SHAREHOLDERS
### IN LIEU OF SPECIAL MEETING

Pursuant to Section 6.202 of the Texas Business Organizations Code, as amended, and Section 8.1 of the Restated Certificate of Formation of Briggs & Veselka Co., the undersigned, being shareholders of Briggs & Veselka Co., a Texas corporation ("B&V"), holding not less than 75% of the shares of B&V, in lieu of a special meeting, the call and notice of which are hereby expressly waived, do hereby consent to the adoption of and adopt the resolutions attached hereto as Annex A.

This consent may be executed in counterparts, each of which shall be deemed an original, and all of which taken together shall constitute one instrument. A copy of this consent, signed and delivered by telecopy or other facsimile transmission, shall be considered an original, executed consent.

IN WITNESS WHEREOF, each of the undersigned has executed this consent on the date set forth below his or her name.

CHARLES F. WELLER
DATE:_____

J. STEVEN AWALT
DATE:_____

GARY TROCHTA
DATE:_____

JOHN C. FLATOWICZ
DATE:_____

ANDREW J. KUNTZ
DATE:_____

LAURA S. FREUDENBERGER
DATE:_____

MERESA S. MORGAN
DATE:_____

MARK R. SCHAAF
DATE:_____1/12/12_____

KEVIN J. LOVING
DATE:_____

DAVID R. PHELPS
DATE:_____

JASON C. SANDERS
DATE:_____

JAMES R. McDONALD
DATE:_____

C. KEVIN CHESSER
DATE:_____

SHEILA A. ENRIQUEZ
DATE:_____

Unofficial Copy Office of Chris Daniel District

## BRIGGS & VESELKA CO.

### RESOLUTIONS OF THE SHAREHOLDERS

#### Ratification of Termination of Carol Cantrell With Cause

WHEREAS, prior to the adoption of these resolutions, Carol Cantrell is a shareholder and an employee of B&V;

WHEREAS, Carol Cantrell entered into an employment agreement with B&V dated December 1, 2000 (the "Employment Agreement");

WHEREAS, in November of 2011, Carol Cantrell communicated to B&V that she was retiring from B&V as an employee effective January 15, 2012;

WHEREAS, after such communication, B&V obtained information, including emails and client communications (the "Indirect Information"), that Carol Cantrell appeared to be engaging directly or indirectly in the following activities which would be in violation of her Employment Agreement:

1.  Carol Cantrell appeared to be performing services (e.g., federal tax planning and tax return preparation) for clients of B&V that she provided to such clients in the past during her employment with B&V, and B&V's time records indicate that she was not providing such services in her capacity as an employee of B&V (but possibly for Cantrell & Cowan, PLLC);

2.  Barbara Nowotny appeared to be performing services (e.g., federal tax planning and tax return preparation) for clients of B&V that are the same as those services she previously rendered to such clients while employed by B&V and was doing so as an employee of a firm owned in whole or in part by Carol Cantrell and\or her husband Patrick Cantrell; and

3.  Both Carol Cantrell and Barbara Nowotny appeared to have called on clients of B&V that Carol Cantrell and Barbara Nowotny served at B&V in order to perform the same services (e.g., federal tax planning and tax return preparation) that both previously rendered to them for the benefit of B&V.

WHEREAS, as a result of receiving such Indirect Information, B&V delivered a letter to Carol Cantrell dated January 3, 2012 ("B&V's Notice Letter"), wherein B&V (i) explained that B&V had obtained information indicating the above actions may have taken place and\or that she may be contemplating taking such actions, (ii) warned her that such actions, if taken, violated her Employment Agreement, (iii) explained that such violations would result in the forfeiture of her retirement benefits contemplated in Article VI of the Employment Agreement, including if she were terminated "With Cause" (as defined in the Employment Agreement), and (iv) requested that Carol Cantrell meet with John Flatowicz to discuss such actions and to avoid such forfeiture;

WHEREAS, after receiving B&V's Notice Letter, Carol Cantrell's attorney delivered a letter ("Cantrell's Attorney's Letter") that (i) contested the validity and enforceability of certain provisions of the Employment Agreement and (ii) accelerated Carol Cantrell's retirement date to January 3, 2012 (the "Accelerated Retirement Date");

WHEREAS, on January 5, 2012, two days after B&V's Notice Letter and Carol Cantrell's Accelerated Retirement Date, B&V received in the mail an envelope that not only included a check paying a B&V invoice, but such envelope also included a check from Charco Promotional Products, Inc., a client of B&V ("Client"), payable to Cantrell & Cowan PLLC ("C&C") and a copy of C&C's invoice showing that such payment was for services provided by Carol Cantrell rendered during November of 2011 ("C&C's Invoice"), well before her designated retirement date of January 15, 2012;

WHEREAS, since Carol Cantrell's attorney requested in Cantrell's Attorney's Letter that all communications with Carol Cantrell be directed to him, Client's check and the C&C Invoice were given to Carol Cantrell's attorney on January 6, 2012, and he was requested to deliver such check and the C&C Invoice to Carol Cantrell;

WHEREAS, B&V's attorneys requested Carol Cantrell's attorney to provide any explanation regarding the C&C Invoice that she had as to why she performed such services for Client through C&C and not B&V, but her attorney responded that he could not provide any response until after her originally designated retirement date of January 15, 2012, and the board of directors has determined that it is prudent to take the actions set forth in these resolutions prior to Carol Cantrell's originally designated retirement date of January 15, 2012;

WHEREAS, the Employment Agreement generally provides that during the period of employment Carol Cantrell agreed (i) to devote her "full time, attention, and energies to the business" of B&V and to use her "best efforts to promote the interests and goodwill" of B&V, (ii) not to compete, directly or indirectly, with B&V by engaging or participating in any business that B&V is engaged in, and (iii) not to solicit or take away, directly or indirectly, any of B&V's clients;

WHEREAS, C&C's Invoice is conclusive evidence that Carol Cantrell violated her agreements under the Employment Agreement since she was employed by B&V in November of 2011 and was at the same time providing services to Client for the benefit of C&C;

WHEREAS, Section 2.3(d) of the Employment Agreement provides that the Period of Employment (as defined in the Employment Agreement) may be terminated "by a majority vote of the Board of Directors With Cause" and "With Cause" is defined as:

"With Cause" shall mean the commission by [Carol Cantrell] of an act constituting a dishonest or other act of material misconduct, or a fraudulent act or a felony under the laws of any state or of the United States to which [B&V] or [Carol Cantrell] is subject, or the commission of any act which results (or is intended to result directly or indirectly) in [Carol Cantrell's] substantial gain or personal enrichment to the detriment of [B&V].

WHEREAS, based on the cumulative amount of Indirect Information that was presented to and reviewed by the board of directors and the conclusive evidence reflected in C&C's Invoice, each member of the board of directors determined that Carol Cantrell had taken actions that required that she be terminated With Cause to prevent further damage and injury to B&V;

WHEREAS, based on B&V's good faith attempt to warn Carol Cantrell that she may forfeit her retirement benefits by delivering B&V's Notice Letter and B&V's attempt to avoid such result by giving her such warning, the board of directors determined that Carol Cantrell's acceleration of her retirement set forth in Cantrell's Attorney's Letter should be rejected since it would be inequitable to allow Carol Cantrell to avoid termination With Cause through such acceleration prior to B&V's receipt of conclusive evidence that she should be terminated With Cause;

77623972.3

2

WHEREAS, the board of directors adopted resolutions denying Carol Cantrell's accelerated retirement, and subject to ratification by the shareholders pursuant to the Amended and Restated Bylaws of Briggs & Veselka Co. (the "Bylaws"), the board of directors adopted resolutions terminating Carol Cantrell With Cause (the "With Cause Termination") and recommended that the shareholders ratify such With Cause Termination; and

WHEREAS, the Bylaws require that an existing shareholder's employment may be terminated only after the board of directors recommends such termination and holders of not less than 75% of the then outstanding shares of stock of B&V ratify such termination;

NOW, THEREFORE, BE IT RESOLVED, that the With Cause Termination is hereby in all respects authorized, approved, ratified, and confirmed by the shareholders of B&V executing this consent, who collectively hold not less than 75% of the outstanding shares of stock of B&V; and

RESOLVED FURTHER, that the proper officers of B&V and any person or persons designated and authorized so to act by any proper officer of B&V are severally authorized to do and perform or cause to be done and performed for and in the name and on behalf of B&V, or otherwise, such other acts, to pay or cause to be paid on behalf of B&V such related costs and expenses, and to execute and deliver or cause to be executed and delivered such other notices, requests, demands, directions, consents, approvals, orders, applications, certificates, agreements, undertakings, supplements, amendments, further assurances or other instruments or communications, under the corporate seal of B&V, or otherwise, for and in the name and on behalf of B&V, or otherwise, as they or any of them may deem to be necessary or advisable to carry into effect the intent of the foregoing resolution or to comply with the requirements of the instruments approved and authorized by the foregoing resolution.

77623972.3

3

## CIVIL CASE INFORMATION SHEET

**Filed 12 January 24 A10:43**
**Chris Daniel - District Clerk**
**Harris County**
**ED101J016692107**
**By: Sharon Carlton**

CAUSE NUMBER *(FOR CLERK USE ONLY)*: 2012-04331 / Court: 055 COURT *(FOR CLERK USE ONLY)*:

STYLED Carol A. Cantrell v. Briggs & Veselka Co.

(e.g., John Smith v. All American Insurance Co; In re Mary Ann Jones; In the Matter of the Estate of George Jackson)

A civil case information sheet must be completed and submitted when an original petition or application is filed to initiate a new civil, family law, probate, or mental health case or when a post-judgment petition for modification or motion for enforcement is filed in a family law case. The information should be the best available at the time of filing. This sheet, approved by the Texas Judicial Council, is intended to collect information that will be used for statistical purposes only. It neither replaces nor supplements the filings or service of pleading or other documents as required by law or rule. The sheet does not constitute a discovery request, response, or supplementation, and it is not admissible at trial.

### 1. Contact information for person completing case information sheet:

| | |
|---|---|
| Name: | Email: |
| Charles A. Sturm | csturm@steelesturm.com |
| Address: | Telephone: |
| 700 Louisiana, 48th Floor | (713) 659-2600 |
| City/State/Zip: | Fax: |
| Houston, Texas 77002 | (713) 659-2601 |
| Signature: | State Bar No: |
| | 24003020 |

**Names of parties in case:**

Plaintiff(s)/Petitioner(s):

Carol A. Cantrell

Defendant(s)/Respondent(s):

Briggs & Veselka Co.

[Attach additional page as necessary to list all parties]

**Person or entity completing case information sheet is:**
- ■ Attorney for Plaintiff/Petitioner
- ☐ *Pro Se* Plaintiff/Petitioner
- ☐ Title IV-D Agency
- ☐ Other:

Additional Parties in Child Support Case:

Custodial Parent:

Non-Custodial Parent:

Presumed Father:

### 2. Indicate case type, or identify the most important issue in the case *(select only 1)*:

| Civil | | | Family Law | |
|---|---|---|---|---|
| **Contract** | **Injury or Damage** | **Real Property** | **Marriage Relationship** | **Post-judgment Actions (non-Title IV-D)** |
| *Debt/Contract* | ☐ Assault/Battery | ☐ Eminent Domain/ Condemnation | ☐ Annulment | ☐ Enforcement |
| ☐ Consumer/DTPA | ☐ Construction | ☐ Partition | ☐ Declare Marriage Void | ☐ Modification—Custody |
| ☐ Debt/Contract | ☐ Defamation | ☐ Quiet Title | *Divorce* | ☐ Modification—Other |
| ☐ Fraud/Misrepresentation | *Malpractice* | ☐ Trespass to Try Title | ☐ With Children | **Title IV-D** |
| ● Other Debt/Contract: | ☐ Accounting | ☐ Other Property: | ☐ No Children | ☐ Enforcement/Modification |
| *Breach of Contract* | ☐ Legal | | | ☐ Paternity |
| *Foreclosure* | ☐ Medical | | | ☐ Reciprocals (UIFSA) |
| ☐ Home Equity—Expedited | ☐ Other Professional Liability: | **Related to Criminal Matters** | **Other Family Law** | ☐ Support Order |
| ☐ Other Foreclosure | | ☐ Expunction | ☐ Enforce Foreign Judgment | **Parent-Child Relationship** |
| ☐ Franchise | ☐ Motor Vehicle Accident | ☐ Judgment Nisi | ☐ Habeas Corpus | ☐ Adoption/Adoption with Termination |
| ☐ Insurance | ☐ Premises | ☐ Non-Disclosure | ☐ Name Change | ☐ Child Protection |
| ☐ Landlord/Tenant | *Product Liability* | ☐ Seizure/Forfeiture | ☐ Protective Order | ☐ Child Support |
| ☐ Non-Competition | ☐ Asbestos/Silica | ☐ Writ of Habeas Corpus— Pre-indictment | ☐ Removal of Disabilities of Minority | ☐ Custody or Visitation |
| ☐ Partnership | ☐ Other Product Liability List Product: | ☐ Other: | ☐ Other: | ☐ Gestational Parenting |
| ☐ Other Contract: | | | | ☐ Grandparent Access |
| | ☐ Other Injury or Damage: | | | ☐ Parentage/Paternity |
| | | | | ☐ Termination of Parental Rights |
| | | | | ☐ Other Parent-Child: |

| **Employment** | **Other Civil** | |
|---|---|---|
| ☐ Discrimination | ☐ Administrative Appeal | ☐ Lawyer Discipline |
| ☐ Retaliation | ☐ Antitrust/Unfair Competition | ☐ Perpetuate Testimony |
| ☐ Termination | ☐ Code Violations | ☐ Securities/Stock |
| ☐ Workers' Compensation | ☐ Foreign Judgment | ☐ Tortious Interference |
| ☐ Other Employment: | ☐ Intellectual Property | ☐ Other Civil: |

| **Tax** | **Probate & Mental Health** | |
|---|---|---|
| ☐ Tax Appraisal | *Probate/Wills/Intestate Administration* | ☐ Guardianship—Adult |
| ☐ Tax Delinquency | ☐ Dependent Administration | ☐ Guardianship—Minor |
| ☐ Other Tax | ☐ Independent Administration | ☐ Mental Health |
| | ☐ Other Estate Proceedings | ☐ Other: |

### 3. Indicate procedure or remedy, if applicable *(may select more than 1)*:

| | | |
|---|---|---|
| ☐ Appeal from Municipal or Justice Court | ☐ Declaratory Judgment | ☐ Prejudgment Remedy |
| ☐ Arbitration-related | ☐ Garnishment | ☐ Protective Order |
| ☐ Attachment | ☐ Interpleader | ☐ Receiver |
| ☐ Bill of Review | ☐ License | ☐ Sequestration |
| ☐ Certiorari | ☐ Mandamus | ☐ Temporary Restraining Order/Injunction |
| ☐ Class Action | ☐ Post-judgment | ☐ Turnover |

**EXHIBIT B-2**